IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KEYONI ENTERPRISES, LLC and MAUI KAI ENTERPRISES LLC dba Tresor-Rare and GRATiAE,<br><br>        Plaintiffs,<br><br>    vs.<br><br>COUNTY OF MAUI, a municipal corporation,<br><br>        Defendant. | CIVIL NO. 15-00086 DKW-RLP<br><br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, FOR PRELIMINARY INJUNCTION** |

## ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, FOR <u>PRELIMINARY INJUNCTION</u>

Keyoni and Maui Kai Enterprises, LLC (the "Enterprises") seek a temporary restraining order or, in the alternative, a preliminary injunction prohibiting the County of Maui from enforcing Maui County Code § 19.52.090(E) against their Tresor-Rare and GRATiAE stores in Lahaina, Maui. Because the Enterprises have failed to show a likelihood of success on the merits of their claims or that they would be irreparably harmed without a temporary restraining order or preliminary injunction, the motion is denied.

## BACKGROUND

The Enterprises lease commercial property on Front Street in Lahaina, Maui, where they operate two high-end cosmetic stores, Tresor-Rare and GRATiAE (the "Stores"). Both businesses are owned by individuals of Israeli descent.

The Enterprises' business model relies on a strategy of "[s]tore employees speak[ing] to passersby, greeting them and asking them if they would be interested in free samples or a demonstration of the store's products." The Stores obtain approximately 75% of their customers through this method. Complaint ¶¶ 29–30; Decl. of Victor Mazliah ("Mazliah Decl.") ¶¶ 7–8.

Over the past year, the LahainaTown Action Committee has "received multiple complaints from business owners and residents in Lahaina regarding the hawking taking place on Front Street." Decl. of Lynn Donovan ¶ 3. These complaints have focused primarily on three cosmetic stores, including Tresor-Rare and GRATiAE. The complaints alleged, among other things, that an employee from GRATiAE "was standing on the sidewalk with his arms outstretched and said 'Let me give you a hug and a sample,'" and that an "employee from Tresor[-]Rare approach[ed] several people on the side walk and handed them sample packets." Decl. of Conklin Wright ("Wright Decl."), Ex. D at 1, 3. In August of 2014, these complaints were referred to Conklin Wright, an inspector for the County of Maui's

Department of Planning, Zoning Administration and Enforcement Division.

Wright Decl. ¶ 4.

Inspector Wright began investigating the complaints by visiting the Tresor-Rare and GRATiAE store locations and observing the store employees' conduct. Inspector Wright personally observed the following:

- Two male employees physically pull[ing] a lady from the sidewalk into the GRATiAE store at 752 Front Street;
- Sales people walking after people on the sidewalk trying to get them to turn around and walk back to their GRATiAE store;
- Sales people handing out samples of their product to people on the sidewalk trying to get them to go back into the GRATiAE store;
- Sales people speaking to people on the sidewalk about their products and trying to get them back into the GRATiAE store;
- Sales people walk[ing] out of the store after people on the sidewalk to try and get them into the Tresor-Rare store at 709 Front Street;
- Sales people hand[ing] out samples and speak[ing] to people on the sidewalk in front of the Tresor-Rare store;
- Sales people hold[ing] the hand of a potential customer on the side walk and walk them into the Tresor-Rare store at 709 Front Street.

Wright Decl. ¶ 6.

Following these observations, Inspector Wright advised the Stores' employees that they could not pass out samples or solicit customers on the sidewalk outside of their stores. When Inspector Wright continued to observe similar conduct, he issued Notices of Warning, dated December 12, 2014, to the landlords of the property where the Stores were operating. Wright Decl. ¶ 7; *see*

Mazliah Decl., Ex. 2. The warnings were issued "[f]or soliciting in a public area" in violation of Maui County Code § 19.52.090(E). Mazilah Decl., Ex. 2.

Inspector Wright conducted follow-up inspections on the Stores subsequent to issuing the Notices of Warning. Because the same conduct continued on the sidewalks fronting the Stores, Wright advised the landlords that Notices of Violations ("NOV") would be sent out if the conduct did not stop. Wright also met with Mazliah, one of the owners of the Stores. Wright Decl. ¶¶ 7–8.

As a result of the initial complaints, Wright's observations, and the fact that there was no observed change in the employees' conduct outside of the Stores, Wright issued NOVs on February 6, 2015 on three stores, two of which were Tresor-Rare and GRATiAE. The NOVs were for violations on November 28, 2014 of Maui County Code § 19.52.090(E), and included an initial fine of $1,000, plus a daily civil fine of $1,000 until the soliciting in public places ceased. Mazliah Decl., Exs. 3, 5. According to Inspector Wright, "[a]s recently as Monday[,] March 23, 2015, I again observed salespeople at both stores soliciting customers on the sidewalk." Wright Decl. ¶ 11.

Maui County Code § 19.52.090(E) (the "ordinance") provides, in relevant part:

> Selling in public places. It is unlawful for any person to carry on or solicit business in any location on any street, highway, or sidewalk. The same is also unlawful in any location, in any park or open space that is owned or maintained by a government agency without the

4

approval of the cultural resources commission, and the responsible government agency having administrative authority over the park or open space.

On March 19, 2015, the Enterprises filed a complaint, asserting the following claims against the County of Maui: a 42 U.S.C. § 1983 claim for violation of the Enterprises' First Amendment (commercial speech) rights; a 42 U.S.C. § 1983 claim for violation of the Enterprises' Fourteenth Amendment (due process) rights; a 42 U.S.C. § 1983 claim for violation of the Enterprises' Fourteenth Amendment (equal protection) rights; and corresponding free speech, due process, and equal protection claims under the Hawai'i Constitution. Complaint ¶¶ 61–118. In conjunction with the complaint, the Enterprises also filed a motion for temporary restraining order or, in the alternative, for preliminary injunction, which is presently before the Court.

## STANDARD OF REVIEW

The standard for issuing a temporary restraining order is identical to that for issuing a preliminary injunction. *See, e.g., Hawaii v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1247 (D. Haw.1999); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order).

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam ) (citation omitted)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("A preliminary injunction is an extraordinary remedy never awarded as a matter of right.").

A plaintiff seeking a preliminary injunction must show:

[1] that he is likely to succeed on the merits,
[2] that he is likely to suffer irreparable harm in the absence of preliminary relief,
[3] that the balance of equities tips in his favor, and
[4] that an injunction is in the public interest.

*Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1289 (9th Cir. 2013) (quoting *Winter*, 555 U.S. at 20). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Id.* at 1291 (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (emphasis added by *Shell Offshore*)). "The elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072. Regardless of

which standard applies, the movant always "has the burden of proof on each element of the test." *Maloney v. Ryan*, 2013 WL 3945921, at *3 (D. Ariz. July 31, 2013); *see Nance v. Miser*, 2012 WL 6674404, at *1 (D. Ariz. Dec. 20, 2012) (citing *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000), citing in turn, *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)).

## DISCUSSION

The Court denies the motion because the Enterprises have failed to satisfy their burden of showing a likelihood of success on the merits of their claims or that they are likely to suffer irreparable harm in the absence of a temporary restraining order or preliminary injunction.

## I.     Likelihood of Success

The Enterprises have not established the requisite likelihood of success for their as-applied and facial challenges to the ordinance, or their equal protection claim.  Each is addressed in turn.

### A.     Challenge to the Ordinance As-applied to the Enterprises

The Enterprises contend that the ordinance violates their commercial speech rights as it has been applied to them.  The Court concludes, however, that the Enterprises are not likely to succeed on this claim.

Commercial speech is protected "to a lesser degree than other types of speech." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 818 (9th Cir. 2013). Restrictions on commercial speech are evaluated using the four-part test first set out in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980):

> (1) if the communication is neither misleading nor related to unlawful activity, then it merits First Amendment scrutiny as a threshold matter; in order for the restriction to withstand such scrutiny, (2) [t]he State must assert a substantial interest to be achieved by restrictions on commercial speech; (3) the restriction must directly advance the state interest involved; and (4) it must not be more extensive than is necessary to serve that interest.

*Valle Del Sol*, 709 F.3d at 820–821 (quoting *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 684 (9th Cir. 2010)) (alteration in original).

The County concedes the first part of the *Central Hudson* test. Opp. at 9. And as suggested by this concession, the Court concludes that the communication at issue here, *i.e.*, the solicitation of business by the Stores' employees outside of their stores, merits First Amendment scrutiny as a threshold matter.

Turning to the second part of the test, the County asserts that its substantial interest in restricting commercial speech through the ordinance is stated in the purpose section of the code chapter related to Maui County Historic Districts, which provides:

> In order to promote the economic, cultural and general welfare of the people of the county and to insure the harmonious, orderly and

efficient growth and development of the county, it is deemed essential by the county council that the qualities relating to the history and culture of the county be preserved, thereby creating attractions for visitors and residents alike.

Maui County Code § 19.48.010. Preserving the history and culture of Lahaina's historical areas goes hand in hand with protecting and promoting the tourism industry in those same areas. The Enterprises do not appear to dispute, and the Court now agrees, that the County has a substantial interest in creating and maintaining attractions for residents and tourists alike by preserving the history and culture of historically significant areas like Lahaina. *See, e.g., Edwards v. District of Columbia*, 755 F.3d 996, 1002 (D.C. Cir. 2014) (holding that "[u]ndoubtedly," the District of Columbia has a "substantial interest in promoting the tourism industry"); *Ctr. for Bio-Ethical Reform, Inc. v. City & Cnty. of Honolulu*, 455 F.3d 910, 922 (9th Cir. 2006) (recognizing Hawaiʻi's substantial interest in protecting and promoting the tourism industry); *Smith v. City of Ft. Lauderdale, Fla.*, 177 F.3d 954, 955–56 (11th Cir. 1999) (recognizing Florida's substantial interest in promoting tourism); *State v. Bloss*, 64 Haw. 148, 159 (1981) ("It is beyond dispute that the City Council has a substantial interest in preserving and maintaining the attractiveness of tourism, one of our State's major industries.").

The third part of the *Central Hudson* test then requires that the restriction on commercial speech must directly advance the County's substantial interest. "'[T]he regulation may not be sustained if it provides only ineffective or remote

support for the government's purpose.'" *Edenfeld v. Fane*, 507 U.S. 761, 770 (quoting *Central Hudson*, 447 U.S. at 564). "[T]his question cannot be answered by limiting the inquiry to whether the governmental interest is directly advanced as applied to a single person or entity," but instead, "the regulation's general application to all others . . . ." *United States v. Edge Broadcasting Co.*, 509 U.S. 418, 427 (1993). "[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfeld*, 507 U.S. at 770–71.

The County asserts that the ordinance directly furthers its interest in preserving the history and culture of Lahaina, in part to promote tourism. The Court agrees. The parties do not dispute the historic nature of Lahaina and its status as a National Historic Landmark, or that tourists visiting Lahaina are an essential part of the area's preservation and survival. The County has proffered evidence, which shows that visitors to Lahaina (as well as business owners and residents) are concerned about the conduct of businesses like the Enterprises that are making visitors uncomfortable and leading to complaints. *See, e.g.*, Decl. of Lynn Donovan ¶ 5 ("As the Executive Director of LAC, I believe that the hawking is negatively affecting the business community and is ruining the charm and historic feel of Front Street Lahaina and needs to be curbed."). There have been

"multiple verbal complaints from shop owners and visitors regarding aggressive sales tactics by several of the cosmetics and lotion stores, including . . . Tresor-Rare and GRATiAE." Decl. of Timothy Hodges ¶ 3; *see* Decl. of Annalise Kehler ¶ 10 ("I personally have received complaints by merchants that pedestrians were crossing the street to avoid hawkers, and that this hurt nearby businesses."). Given these circumstances, the Court is convinced that the County has a legitimate concern for the negative impact on tourism (and the atmosphere in the historic portions of Lahaina that will draw tourists) resulting from aggressive sales tactics conducted in the public space outside of businesses. There have been several complaints from tourists, residents, and nearby business owners alike. The ordinance directly addresses these complaints and concerns and thus directly advances the County's interests, satisfying the third part of the *Central Hudson* test. *See Bloss*, 64 Haw. at 160 ("There is a direct relationship between the ban on commercial handbilling and the State's interest in preventing detrimental nuisances, especially to tourists.").

Addressing the fourth and final part of the *Central Hudson* test, the ordinance is not more extensive than is necessary to serve the County's interest in preserving the history and culture of Lahaina in order to draw in visitors. "The test is sometimes phrased as requiring a 'reasonable fit' between [the] government's legitimate interests and the means it uses to serve those interests, or that the

government employ a means narrowly tailored to achieve the desired objective . . ." *Valle Del Sol*, 709 F.3d at 825 (internal citations, quotation marks, and alterations omitted).  The ordinance is not a complete ban on commercial speech in public places in the Lahaina historic districts.  It is limited to "carry[ing] on or solicit[ing] business" in the context of selling in public places.  *Cf. Bloss*, 64 Haw. at 167 (holding that a regulation is more extensive than necessary because it "prohibits commercial speech at all time and in any manner in Waikiki" where the regulation prohibited "any person to sell or offer for sale, solicit orders for, or invite attention to or promote in any manner whatsoever, directly or indirectly, goods, wares, merchandise, food stuffs, refreshments or other kinds of property or services, or to distribute commercial handbills, or to carry on or conduct any commercial promotional scheme, advertising program or similar activity").

There are other methods for businesses in the Lahaina historic districts to permissibly express their commercial speech.  For example, the same county code chapter provides for permissible signage (within certain physical limitations) to be displayed.  *See* Maui County Code § 19.52.030.  Further, as the County admits in its brief, "nothing prevents Plaintiffs' agents from calling out from inside their stores to make pedestrians aware of whatever message they wish to convey."  Opp. at 12.  Given the legitimate concern that the County is seeking to address, the

Court determines that the ordinance is a reasonable fit to further the interest in creating attractions by maintaining the historic nature of Lahaina.

Accordingly, the Enterprises have failed to establish a likelihood of success for their as-applied challenge to the ordinance.

## B.    Facial Challenge

Although the Enterprises also facially attack the ordinance for vagueness, there is an insufficient showing of a likelihood of success on the merits of this challenge as well.  "When First Amendment freedoms are at stake, courts apply the vagueness analysis more strictly, requiring statutes to provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles."  *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1149 (9th Cir. 2001).  "A statute must be sufficiently clear so as to allow persons of 'ordinary intelligence a reasonable opportunity to know what is prohibited.'"  *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).

The Enterprises attempt to create an argument for vagueness by asserting that one could violate the ordinance, even if they are not on public property.  However, this argument is unavailing, and the Enterprises have provided no evidence in support.  The plain language title of the ordinance initially establishes that it applies only to "[s]elling in public places."  Maui County Code

§ 19.52.090(E).  Moreover, the body of the ordinance consistently addresses conduct only "in any location on any street, highway, or sidewalk," or "in any park or open space that is owned or maintained by a government agency . . . ."  *Id.*  In the face of this clear language, the Enterprises try to construct vagueness.  They assert that even the County does not know what the ordinance means, because the County is prohibiting Enterprises' employees from soliciting business while remaining in their stores.  As support, the Enterprises contend that Mr. Mazliah instructed his employees not to leave the store premises:

> I conducted an investigation to understand the accusations and to take appropriate action to make sure the stores complied with the Ordinance.  From reading the Ordinance, I believed that as long as the stores' staff remained with the stores—and not on public property— the stores' employees could speak to passersby and not violate the Ordinance.  I instructed the stores' managers to enforce this policy.

Mazliah Decl. ¶ 12.

The Enterprises, however, have provided no evidence indicating that the Stores' managers followed Mazliah's instructions, or that the Stores' employees actually listened to any such directions, had they been provided.  Indeed, Inspector Wright's substantial investigation into the public complaints shows that the Stores' employees frequently go on to public property outside the store and attempt to solicit business, and have done so as recently as this past week, notwithstanding the NOVs and notwithstanding Mazliah's instructions to his managers.  Wright Decl. ¶¶ 6–7, 11.  This was the conduct that triggered the initial informal warnings,

14

the subsequent Notices of Warning, and ultimately, the NOVs.  *See* Mazliah Decl.,

Exs. 3, 5 (noting that solicitation occurred "in front of" the Tresor-Rare and

GRATiAE stores); Wright Decl. ¶ 7; Mazliah Decl., Ex. 2.  The County did not

issue the NOVs for conduct by an employee while he/she was inside the store

premises and, in fact, the County's brief admits that "nothing prevents Plaintiff's

agents from calling out from inside their stores to make pedestrians aware of

whatever message they wish to convey."  Opp. at 12.  Despite the Enterprises'

efforts to suggest that they were cited for conduct occurring inside the Stores'

premises, there is no evidence to actually indicate that, and the County admits that

it could only cite for a violation of the ordinance if an individual was on public

property.

        The Enterprises also argue that the ordinance is vague because the terms

"solicit" and "business" are undefined.  The Court disagrees that these terms are

unconstitutionally vague.  As a threshold matter, the Court notes that the two terms

should not be viewed in isolation, because they appear in the same clause, *i.e.*, "[i]t

is unlawful for any person to carry on or solicit business . . . ."  Maui County Code

§ 19.52.090(E).  Although the terms "solicit" and "business" are, on their own, not

impermissibly vague in the context of the ordinance, the term "solicit business"

provides an even more specific and clear description, such that a reasonable person

would know the prohibited conduct here.  Solicitation is a commonly used term in

the law, with a "commonly understood" meaning. *Wisconsin Dept. of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 223 (1992) (quoting the Black's Law Dictionary and Webster's dictionary definitions). By further limiting solicitation to business, the ordinance has the requisite specificity and clarity such that the Enterprises are not likely to succeed on the merits of their facial challenge for vagueness.

### C.   Equal Protection Claim

Finally, the Enterprises have asserted a claim under the Equal Protection Clause of the Fourteenth Amendment, based on the Israeli nationality of the owners of the Stores. As part of this claim, the Enterprises contend that, of the few other businesses that have also been cited under the ordinance, all of them are owned by individuals of Israeli descent. However, the Enterprises are unable to show that the County is acting with any intent or purpose to discriminate, and thus this claim is unlikely to succeed.

"[A] claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment [requires] a plaintiff [to] show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). However, the County has asserted, and the Enterprises do not rebut, that the County did not know the nationality of the owner of the

Stores prior to investigating the complaints, and even then, only when Inspector Wright was informed of that nationality by Mr. Mazliah himself. Wright Decl. ¶ 10. Because there is nothing more than this limited information to speak to this claim at this time, the Court cannot say that the Enterprises are likely to succeed on their Equal Protection claim.[1]

## II.    **Irreparable Harm**

In conjunction with their unavailing arguments for success on the merits, the Enterprises' argument that there is irreparable harm is unpersuasive. They rely on two Ninth Circuit cases, both of which do not direct a finding of irreparable harm here. In *Goldie's Bookstore, Inc. v. Superior Court of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984), the Ninth Circuit, as emphasized by the Enterprises in their brief, stated that "[a]n alleged constitutional infringement will often alone constitute irreparable harm." *Id.* However, the Ninth Circuit only discussed this general principle in the context of balancing the equities, and even then, ultimately concluded that "[n]one of the factors cited by the district court supports a finding that the balance of hardships tips sharply in [the plaintiff's] favor." *Id.* To the contrary, in addressing

_____

[1]While there is undisputed evidence that Tresor-Rare, GRATiAE, and other Israeli-owned businesses have seen some enforcement actions taken against them by the County, there is no evidence that the County's actions are limited to these businesses. Thus, evidence that might implicate equal protection concerns is lacking. The Enterprises themselves do not even have this information, as they are still waiting for responses from the County on requests for records related to enforcement of the ordinance. Decl. of Corianne Lau ¶¶ 3–12.

the irreparable harm faced by plaintiff who asserted, among other things, an equal

protection claim, the Court concluded that:

> Mere financial injury, however, will not constitute irreparable harm if
> adequate compensatory relief will be available in the course of
> litigation.  Here, [plaintiff's] harm would be easily calculable and
> compensable in damages if the state court appeal were successful.

*Id.* at 471–72.

The Enterprises have similarly not satisfied their burden to show harm that

would not be "easily calculable and compensable in damages."  *Id.*  While the

Enterprises allude generally to harm resulting from violations of their equal

protection and First Amendment commercial speech rights, the only concrete harm

they cite is purely economic.  *See, e.g.*, Mazliah Decl. ¶¶ 19–20 (discussing the

need to repay fines paid by the landlord for past and potential future violations).

The speech they seek to protect consists only of "[s]tore employees speak[ing] to

passersby, greeting them and asking them if they would be interested in free

samples or a demonstration of the store's products," which ultimately leads to

approximately 75% of the Enterprises' business.  Complaint ¶¶ 29–30.  If they do

not engage in this speech, the Enterprises speculate that "the Stores will be unable

to pay rent and will go out of business if the employees cannot inform people about

the Stores' products and invite potential customers to enter the Stores for free

samples and demonstrations."[2]  Complaint ¶ 54.  In short, the Court concludes that all of the Enterprises' specified harms "could be adequately compensated with money damages if [the Enterprises] succeed[] in this matter."  *Naser Jewelers, Inc. v. City of Concord, New Hampshire*, 2007 WL 1847307, at *9 (D.N.H. June 25, 2007) (magistrate judge's adopted recommendation that there was no irreparable harm for a claim that a municipal ordinance infringed on commercial speech); *see Carlson v. City of Duluth*, 958 F. Supp. 1040, 1059 (D. Minn. 2013) (magistrate judge's adopted recommendation that "while the assessment of some as yet undetermined, potential civil monetary fine could serve as a burden on Plaintiff, all such fines would be easily calculable damages that he would be entitled to recover (if paid) or to be dismissed (if not paid) should he prevail in his underlying claim that the City Ordinance is unconstitutional.").

The Enterprises also rely on *Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009), to support their argument of irreparable harm.  In that case, the Ninth Circuit held that—

> the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.  The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable.  Klein has therefore

---

[2]The allegations that the Enterprises could go out of business are highly speculative and do not support a showing of irreparable harm without more concrete factual support. *See Goldie's Bookstore*, 739 F.2d at 472 ("Speculative injury does not constitute irreparable injury.").

> demonstrated a likelihood of irreparable injury in the absence of an injunction.

*Id.* at 1208 (internal citations, quotation marks, and alterations omitted).  Unlike the situation in *Klein*, however, the speech involved here involves no urgency in timing, is not expressive, and admittedly only involves potential economic consequences, which can be compensated with damages.  *See Cunningham v. Adams*, 808 F.2d 815, 822 (11th Cir. 1987) (distinguishing cases finding that constitutional violations could not be compensated, and thus there was irreparable harm, with the constitutional violations in that particular case because "the violation in this case *can* be more readily compensated. . . .  If [plaintiff] is successful in the litigation, the court . . . can award lost profits and other monetary damages to compensate . . . .  This kind of relief will make [plaintiff] essentially whole . . . .").

The Enterprises have simply not shown any harm that would be *irreparable*.  Essentially, the Enterprises are arguing that because they are alleging a violation of their commercial speech rights, they will suffer irreparable harm without an injunction.  The line, however, is simply not that bright.  *See, e.g.*, *Naser Jewelers*, 2007 WL 1847307, at *9 (rejecting in the commercial speech context "the proposition that any infringement on First Amendment rights causes irreparable harm"); *Hohe v. Casey*, 868 F.2d 69, 72–73 (3d Cir. 1989) ("[T]he assertion of First Amendment rights does not automatically require a finding of irreparable

injury. . . . Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction."); *Amwest Sur. Ins. Co. v. Reno*, 1995 WL 230357, at *1 n.1 (9th Cir. 1995) (unpublished) ("We reject [plaintiff's] argument that economic harm constitutes irreparable injury when a . . . right protected by the Constitution has been impaired."). The Enterprises candidly complain that without an injunction, their businesses would suffer a 75% loss in sales, fines totaling as much as $1,000 per day from the date the NOVs were issued, and ultimately, the potential shuttering of operations. Without minimizing the import of these effects, real or not, none of them are irreparable.

In conjunction with the failure to show a likelihood of success on the merits of their claims, the Enterprises have not shown an irreparable injury to warrant a temporary restraining order or a preliminary injunction at this time. In light of the Enterprises inability to satisfy these two elements, the Court need not reach the balancing of the equities or the public interest factors.

## CONCLUSION

The Enterprises' motion for temporary restraining order or, in the alternative, for preliminary injunction (Dkt No. 2) is hereby DENIED.

IT IS SO ORDERED.

DATED:  March 30, 2015 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge

---

Keyoni Enterprises, LLC, et al. v. County of Maui; CV 15-00086 DKW/RLP; ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, FOR PRELIMINARY INJUNCTION